LEE et al. v. OWEN.

No. 2153.

Court of Civil Appeals of Texas. Eastland.

June 13, 1941.

Rehearing Denied Sept. 19, 1941.

Conner & Conner, of Eastland, and F. D. Wright, of Cisco, for appellants.

Grisham & Grisham, of Eastland, for appellee.

GRISSON, Justice.

On December 22, 1928, Hon. R. Q. Lee executed a promissory note for $1,009.35 payable to Mrs. C. Owen, bearing 8 per cent interest, and providing for 10 per cent attorney's fees. Lee died April 18, 1930. On March 24, 1931 Mrs. Owen filed her claim on said note with Guy Dabney, administrator of the Lee estate; the claim was allowed by the administrator and approved by the probate court, and became a final judgment for the amount then due on said note. Jones v. Wynne, 133 Tex. 436, 129 S.W.2d 279. Thereafter Dabney filed his final account and asked to be discharged as administrator. The account of the administrator falsely recited that the claim of Mrs. Owen and a debt owing to Cisco Banking Company had been paid. The report was approved and Dabney discharged as administrator on August 24, 1931. On July 29, 1931 the heirs of R. Q. Lee, being desirous of terminating the administration and saving the expenses incident thereto, and evidently expecting to borrow enough money to pay the debts reported paid, appointed Guy Dabney (then administrator of the Lee estate) as their "true and lawful trustee and attorney-in-fact." (There is no intimation in the record that Dabney profited by the false recital of payment above referred to. The record, including the appointment of Dabney as trustee, indicates said recital was made solely for the purpose of removing the estate from the control of the probate court and to save the expense of a court administration, and was done for the benefit of the Lees.) The instrument authorized Dabney, for said heirs, and in their "names, places and stead, to bargain, sell, deliver, assign, convey any and all property regardless of where situated, that has been formerly owned by R. Q. Lee and which constitutes a part of the estate of R. Q. Lee, *it being the intention of this conveyance*

*to give to the said Guy Dabney each and every right to do any and all things with said estate or any part thereof that we could do if acting for ourselves,* hereby giving and granting unto the said Guy Dabney the right to borrow money and execute proper notes or bonds to insure the repayment of same, and to hypothecate, mortgage trust deed, or in any manner that he may deem proper to encumber said property for the purpose of securing such indebtedness * * * *and to incur such necessary expense in the management, control, operation and preservation of said estate as he may deem advisable * * *.*" The trustee was expressly authorized to execute notes or renewals thereof evidencing the indebtedness "remaining unpaid upon the close of the administration" to the Cisco Banking Company, shown in the final account of the administrator to have been paid. The instrument further recited: *"The said Guy Dabney shall as trustee for us and for the creditors of said estate remaining unpaid manage,* control, rent, lease or dispose *of said estate* or any part thereof *in such manner* and at such time to such persons and for such consideration *as he may deem proper * * *."* The instrument then recited that when the indebtedness owing to the Cisco Banking Company was paid the trustee should reconvey to the heirs executing the instrument "such part of said property as shall remain undisposed of but *subject to the liens against said property now existing and subject to such other liens * * * as may be made by the said Guy Dabney as trustee."* The instrument recited that any sales, leases or encumbrances made by the trustee should be made at private sale "as fully and to all intent as effective as we could do if personally present and acting for ourselves." The instrument provided for a monthly salary for the trustee. It provided for a successor for the trustee. It further recited: *"The provisions of this agreement shall be* binding on us, our heirs and assigns, shall be *irrevocable * * * until such time as the indebtedness or any extension thereof now owing by the said estate of R. Q. Lee shall have been paid."* (Italics ours.)

Before March 14, 1932, the Cisco Banking Company (a partnership) failed. Mrs. Owen, the heirs of R. Q. Lee, deceased, Guy Dabney, and many others, constituted the stockholders of said bank. For the purposes of paying off the depositors

682

and creditors of said bank, to prevent the enforcement of personal liability of each partner for the entire indebtedness of the bank and for the purposes of having each stockholder eventually contribute, in the payment of the depositors and creditors of the defunct banking company, in proportion to their stock ownership in said bank, the stockholders thereof, including Mrs. Owen and the heirs of R. Q. Lee, deceased, conveyed their non-exempt property to Hon. F. D. Wright, as trustee. In the instrument the stockholders were known as "First Parties", and F. D. Wright, trustee, as "Second Party." Guy Dabney, individually and as trustee, signed said instrument as one of the First Parties. It was agreed that the title to the property conveyed to Wright, trustee, should be held by Wright in trust upon the terms and conditions set out in said instrument, and the property might be sold and disposed of by the trustee for the purpose of fulfilling the terms and conditions of the instrument. It was stipulated that "First Parties" should remain in control and possession of their respective property, the title to which was conveyed to the trustee, until the property was sold. It provided the trustee might at such times as he deemed it advisable undertake to sell for cash so much of the property conveyed to him by the First Parties as might be necessary for the Cisco Banking Company to pay off its depositors and creditors and for the further purpose of making adjustments between the First Parties. It provided the Bank should give to the trustee a lien upon the assets of the Bank securing repayment to the trustee, for the benefit of First Parties, of all money advanced by the trustee to the bank, subject to the rights of the parties in control of the bank to dispose of the assets for the purpose of paying off its depositors and creditors ratably. The instrument further provided that after the purpose of the trust had been carried out, property remaining in the hands of the trustee should be reconveyed to the parties who conveyed same to him. Before the trial of this suit, Wright, Trustee, had carried out the purpose of the trust agreement and the Lee heirs, or Dabney, trustee, held certain real estate theretofore conveyed in trust to Wright, trustee, and belonging to the Lee estate. This property the Lee heirs had acquired as heirs of R. Q. Lee, deceased, subject to the debts owing by the estate. Sometime, presumably about the time of the closing of the administration of the Lee estate, which occurred simultaneously with the acquisition by Dabney, as trustee, of all the property he had theretofore held belonging to the Lee estate, as administrator, Mrs. Owen inquired of Dabney with reference to her note, or debt, and was assured by him that the debt would be paid as the Lee estate was liable therefor.

November 21, 1939, Dabney executed a note payable to Mrs. Owen for $1,729.30. This note on its face showed to be a renewal and extension of the note dated December 22, 1928. It was signed "R. Q. Lee Estate by Guy Dabney, Trustee."

On May 6, 1940, Mrs. Owen instituted this suit against R. Quincey Lee, and others, making as defendants therein the heirs of R. Q. Lee and Guy Dabney, individually and as trustee. In her amended petition plaintiff alleged the foregoing facts. She alleged the execution of the note for $1,009.35 by R. Q. Lee on December 22, 1928; that R. Q. Lee died and Guy Dabney was appointed and qualified as administrator of his estate; that a claim on her first note was allowed by said administrator and approved by the probate court, and facts showing a valid judgment in her favor against said estate for the amount then owing on said first note. The plaintiff further alleged that Dabney, the administrator, filed his account for final settlement and that in said final account the administrator falsely showed, without her knowledge, that he had paid plaintiff's claim against the estate; that the administrator's final account was approved, the estate closed and the administrator discharged on August 24, 1931, and that the property of the Lee estate passed into the hands of the Lee heirs and trustee. Plaintiff alleged that the portion of the probate proceedings which showed the payment of plaintiff's claim constituted an "improper administration"; that the record showing payment was false and should be set aside. That it was known to defendants that the estate had not been fully administered and defendants "planned together * * * to avoid a full and faithful administration of said property, and to resort to a plan and scheme less burdensome to the estate * * * with full knowledge that said indebtedness due this plaintiff * * * and other people had not been paid, and to effectuate the plan * * * they reported * * * the pay-

ment of plaintiff's debt." That for said purposes the defendants then closed the administration, executed the instrument appointing Guy Dabney their trustee and attorney-in-fact, and, simultaneously with the closing of the administration, as defendants' trustee and attorney-in-fact, Dabney took charge of all the property of the Lee estate which he then held as administrator. Plaintiff set out in her petition the instrument appointing Dabney trustee and attorney-in-fact for the Lee heirs. Plaintiff further averred that it was well known to all the defendants that the debt owing by the estate to her had not been paid and that plaintiff continued to discuss the matter of non-payment with Dabney and that none of the defendants ever claimed plaintiff's debt had been paid. That Dabney assured plaintiff her debt would be paid and that the Lee estate was liable for its payment. She alleged that Dabney had the authority under the instrument appointing him trustee and attorney-in-fact to execute the second note; that Dabney's act in executing said note was intended to and did bind the estate of R. Q. Lee, deceased, for the payment thereof, and that the property of the estate which had passed into the hands of the defendants was subject to the payment of her debt, and that the defendants hold the land belonging to the R. Q. Lee estate in trust for plaintiff's benefit until her debt is paid. She alleged demand upon defendants for the payment of the second note and made the usual averments in a suit upon a promissory note. She alleged that the estate of R. Q. Lee had been fully administered, except as to plaintiff's claim, and that the estate was solvent. She alleged the acts of the defendants aforesaid with reference to her claim and their acts in prematurely closing the administration and in appointing Dabney trustee and attorney-in-fact and causing him, as such, to take charge of the property he then held as administrator. She alleged that their act in reciting in the administrator's final account that her claim had been paid constituted a fraud upon her; that if it did not, it constituted an improper administration and that the records of the probate court should be corrected and canceled wherein they showed payment of said account. She prayed, among other things, that the recitals in the probate records showing payment of her claim be canceled, that she have judgment for the principal, interest and attorney's fees due upon the second

note, and for a judgment foreclosing her lien against the land belonging to the Lee estate in the hands of the defendants, for general relief, etc.

Upon a trial to the court Mrs. Owen introduced evidence in support of said allegations. The court entered judgment for plaintiff to the effect that the estate of R. Q. Lee, deceased, was indebted to plaintiff in the amount of principal, interest and attorney's fees due on the second note, to-wit, $2,074.70, and for foreclosure of a lien against the real estate in the hands of the defendants (describing it) as the heirs of R. Q. Lee, deceased, and ordering its sale to satisfy plaintiff's debt. The defendants, Dabney excepted, have appealed.

■ The instrument appointing Dabney as trustee and attorney-in-fact for the heirs of R. Q. Lee and the instrument appointing Wright as trustee are too lengthy to set out in this opinion. We think it is unnecessary to discuss their provisions further than has already been done. We are of the opinion the appointment of Dabney as trustee and attorney-in-fact for the heirs of R. Q. Lee, simultaneously with his premature discharge as administrator, was sufficient to authorize Dabney to execute the second note and supports the judgment for debt and foreclosing plaintiff's lien against the land in the heirs' possession, which land was acquired by them as the heirs of R. Q. Lee, deceased. We are further of the opinion that the appointment of F. D. Wright, trustee, did not as a matter of law terminate the authority of Dabney as trustee and attorney-in-fact. The instrument executed by the Lee heirs appointing Dabney as their trustee and attorney-in-fact was by its terms irrevocable. At least, it was not conclusively shown that the powers conveyed by that instrument had terminated when Dabney executed the renewal note.

■ We think the judgment establishing plaintiff's debt and foreclosing a lien against the land in the possession of the heirs is correct for another reason. Article 3315 provides: "Any person interested in an estate may, at any time before any character of proceeding is decided upon by the court, file opposition thereto in writing, and shall be entitled to process for witnesses and evidence, and to be heard upon such opposition as in other suits." If Mrs. Owen was not a "person interested in an estate" within the meaning of those words, as used in said statute, she had no right

to appear and contest the administrator's final account, falsely showing plaintiff's debt had been paid; had no power to appeal from the order of approval (if appealable), and was not concluded thereby. Daniels v. Jones, Tex.Civ.App., 224 S.W. 476, 477, writ refused; Pena y Vidaurri's Estate v. Bruni, Tex.Civ.App., 156 S.W. 315, 316, writ refused; Arai v. Saenz, Tex.Civ.App., 52 S.W.2d 383, writ refused; Brown v. Fleming, Tex.Com. App., 212 S.W. 483, 486; Moore v. Wooten, Tex.Com.App., 280 S.W. 742, 746; Alexander v. State, Tex.Civ.App., 115 S.W.2d 1122, 1125, writ refused; Roy v. Whitaker, 92 Tex. 346, 48 S.W. 892, 49 S.W. 367.

The judgment is affirmed.